UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JERRY WELLS and DIANE WELLS,
husband and wife and the marital community
composed thereof,

                    Plaintiffs,

        v.

CHASE HOME FINANCE, LLC;
JPMORGAN CHASE BANK N.A.;
QUALITY LOAN SERVICE CORP. OF
WASHINGTON,

                    Defendants.

Case No. C10-5001RJB

ORDER ON CHASE AND
QUALITY LOAN
SERVICE CORP.'S
MOTIONS FOR
JUDGMENT ON THE
PLEADINGS

This matter comes before the court on Chase's Motion for Judgment on the Pleadings (Dkt. 21) and on Quality Loan Service Corp. Motion for Judgment on the Pleadings and Joinder in Chase's Motion for Judgment on the Pleadings (Dkt. 23).   The court has considered the pleadings filed in support of and in opposition to the motions and the file herein.

                    PROCEDURAL HISTORY AND RELEVANT FACTS

The following facts are set forth in plaintiffs' complaint, and in documents appended to the complaint, upon which the complaint relies.

In October of 2006, plaintiffs Jerry and Diane Wells wished to buy four parcels of land in Lewis County, Washington (the Lewis County Property), to build an RV park, to run a golf course on the property, and to harvest timber.  To fund the purchase of these parcels, plaintiffs refinanced their Auburn

1   house to take equity from the house, and obtained a bridge loan from a private party.

2          On October 11, 2006, Washington Mutual Bank (WaMu) extended a loan (the first mortgage) to

3   plaintiffs to purchase the Lewis County property.  The loan was evidenced by a note and secured by a

4   deed of trust on several parcels of land.  Plaintiffs then executed a second deed of trust (the second

5   mortgage), secured by the same property as that secured by the first deed of trust, to pay off the bridge

6   loan and to make improvements on the Auburn house.  As of May of 2008, the total amount of debt on the

7   two mortgages was approximately $1,318,500.  Plaintiffs' primary residence was/is on one of the Lewis

8   County properties and they intended to sell their Auburn residence.

9          In September of 2008, the FDIC seized WaMu and Chase acquired certain WaMu assets from the

10  FDIC, including plaintiffs' loans.

11         In the Fall of 2008, due to their inability to sell their Auburn house, loss of stable income, and

12  decline in value of the Lewis County property, plaintiffs found themselves in a difficult financial

13  situation.  Plaintiffs continued to make the payments on the first and second mortgage, "but just barely."

14  Dkt. 6, at 11.  Plaintiffs were notified by letter on October 21, 2008, from WaMu's Homeownership

15  Preservation Program, that WaMu "may be able to change your home loan terms to help get you back on

16  track."  Dkt. 6, at 11.

17         Plaintiffs allege that, in December of 2008, after trying several times to contact WaMu, they

18  reached a representative, "Todd," in WaMu's Loss Mitigation Department.  Plaintiffs contend that Todd

19  told them that he could send them a modification sheet, but that plaintiffs would have to be behind in their

20  payments in order to qualify.  Plaintiffs contend that, because it appeared that missing payments was the

21  only way to obtain a modification, they missed their December 2008 payment. Plaintiffs continued to

22  miss their payments until July 1, 2009.

23         From December of 2008 through May of 2009, plaintiffs attempted to negotiate with Chase or

24  WaMu for a loan modification, and complain that they dealt with several individuals; they received

25  conflicting instructions and advice from these individuals; they were not contacted by WaMu or Chase

26  employees after they left messages; they were receiving collection calls; they were reported to credit

27  agencies for the missed payments; and their credit cards were canceled as a result of the reports to the

28  credit agencies.

On December 24, 2008, plaintiffs submitted a loan modification application to Chase. Dkt. 6, at 28. The application stated as follows: "Note: Please allow 4-6 weeks for processing."  Dkt. 6, at 28. *Emphasis in the original*.

On March 13, 2009, a Chase representative requested additional paperwork from plaintiffs. Plaintiffs sent Chase information.

On April 24, 2009, plaintiffs found a Notice of Default posted on the front door of their Lewis County residence.  Plaintiffs called Chase and were advised by a Chase employee that the foreclosure process would be stopped since plaintiffs and Chase were in negotiation.

On April 30, 2009, plaintiffs spoke with Chase employee Ms. Maliszewska, who informed them of the terms of the loan modification that Chase was offering to plaintiffs.  The modification offer required $24,500 up front, and graduated interest rates over the forty year term of the loan, from 3.002% to 4.78%.  Ms. Maliszewska informed plaintiffs that the foreclosure process had been stopped.

On May 4, 2009, plaintiffs spoke to Ms. Maliszewska, who told plaintiffs that, if they did not accept the modification proposed by Chase, they could make a payment of some sort starting on July 1, 2009, as part of a trial/testing formula.

On June 1, 2009, plaintiffs received loan modification documents from Chase.  Plaintiffs did not accept the modification offer.

On July 1, 2009, plaintiffs sent two checks to Chase, totaling $5,750.  These checks were returned in letters that stated that certified funds were required.

Plaintiffs attempted to contact Ms. Maliszewska many times, but were not able to reach her.

On July 2, 2009, plaintiffs found a Notice of Trustee's Sale, dated June 30, 2009, taped to the front window of their home on the Lewis County property.

Plaintiffs had various contacts with Chase employees about a modification.

In July of 2009, on direction of Chase employee Kaye Jackson, plaintiffs reapplied to Chase for a loan modification.

From July until September of 2009, plaintiffs communicated with various individuals at Chase regarding the loan modification and foreclosure.

In September of 2009, Chase informed plaintiffs that, rather than foreclose, Chase would offer

them a trial loan modification for three months, with reduced payments, while Chase determined whether a final loan modification was feasible.  Plaintiffs agreed to the three month trial plan. Plaintiffs sent three checks for $5,267.60 each to Chase.  It is not clear from the complaint when those checks were sent to Chase.

On October 26, 2009, plaintiffs received a Notice of Continuance of Trustee's Sale, continuing the auction of the property to December 4, 2009.

On October 29, 2009, Ms. Jackson told plaintiffs that the sale was on indefinite hold, regardless of legal notices, and to make payments according to the agreement.

On November 12, 2009, Ms. Jackson informed plaintiffs by letter that the foreclosure process had been placed on hold, and that, before the end of the trial period, updated financial documentation must be submitted to Chase by plaintiffs for a review of a permanent loan modification.  The letter informed plaintiffs that plaintiffs' request for a loan modification for the home equity line of credit was denied because it appeared that plaintiffs' income was sufficient to support the current payment.

On December 3, 2009, plaintiffs received a Notice of Continuance of Trustee's Sale, continuing the auction to January 8, 2010.

On December 22, 2009, plaintiffs filed a Complaint for Damages and Injunctive Relief in Lewis County Superior Court, against Chase Home Finance, LLC and JPMORGAN CHASE BANK, N.A. (collectively Chase), and Quality Loan Service Corp. of Washington (QLS).  Dkt. 6, at 8, *et seq*. On December 22, 2009, plaintiffs filed in state court a motion for preliminary injunction restraining the trustee's sale.  Dkt. 6, at 86.

On January 5, 2010, the case was removed to federal court.  Dkt. 1. On January 12, 2010, plaintiffs' counsel advised the court that the motion for preliminary injunction was no longer a pending motion. Dkt. 9.

The complaint alleges claims against Chase for misrepresentation; equitable and/or promissory estoppel; outrage; defamation of credit; violation of the Washington Consumer Protection Act (CPA); violation of the Fair Credit Reporting Act (FCRA); violation of the Fair Debt Collection Practices Act (FDCPA); and breach of contract. Dkt. 6, at 22-24.  The complaint alleges a wrongful foreclosure claim against Chase and QLS. Dkt. 6, at 22-23.

1

<u>MOTIONS FOR JUDGMENT ON THE PLEADINGS</u>

2      On August 12, 2010, Chase filed a motion for judgment on the pleadings (Dkt. 21), contending

3  that (1) plaintiffs failed to plead essential elements of their tort claims for outrage and misrepresentation;

4  (2) plaintiffs' claims for outrage and misrepresentation are barred by the economic loss doctrine; (3)

5  plaintiffs have not stated a claim for promissory estoppel because an express contract governs the

6  relationship between plaintiffs and Chase, and because the complaint fails to allege that Chase promised

7  them anything; (4) plaintiffs' credit reporting claims fail because plaintiffs failed to allege that they

8  disputed the accuracy of any credit report to a credit reporting agency, as required by the FCRA, and

9  because the FCRA preempts plaintiffs' credit defamation claim; (5) plaintiffs have not stated a claim for

10  breach of contract because they have not alleged that Chase breached any specific contract term, or failed

11  to perform any term in good faith; (6) plaintiffs' CPA claim is preempted by the National Bank Act

12  (NBA), and because they fail to allege facts showing a deceptive practice, public interest impact, or injury

13  caused by Chase; and (7) plaintiffs' FDCPA claim fails because plaintiffs failed to plead that Chase is a

14  debt collector under the FDCPA, because plaintiffs' debt falls outside of the debt covered by the FDCPA,

15  and because plaintiffs allege no actionable conduct.

16      On August 12, 2010, QLS filed a motion for judgment on the pleadings and joinder in Chase's

17  motion for judgment on the pleadings (Dkt. 23), contending that plaintiffs cannot state a claim for

18  wrongful  foreclosure under the Deed of Trust Act (DTA) because no foreclosure has occurred, and there

19  is no cause of action for wrongful initiation of foreclosure proceedings.

20      On October 15, 2010, plaintiffs filed opposition to the motions for judgment on the pleadings,

21  arguing that (1) they have stated a claim for misrepresentation because Chase made at least three false

22  statements of material fact; (2) plaintiffs' misrepresentation claim is not barred by the economic loss rule

23  because the duty Chase allegedly violated did not arise from the contract; (3) plaintiffs' outrage claim is

24  not barred by the economic loss rule because the losses allegedly caused by Chase are harms to plaintiffs'

25  dignitary [sic] and emotional interests; (4) plaintiffs' have stated sufficient facts to support an outrage

26  claim because the allegations show that Chase initiated and continued to pursue the foreclosure process

27  even though Chase told the parties that it would stop the process because the parties were in negotiation;

28  (5) the CPA claim is not preempted by the National Banking Act; (6) plaintiffs have alleged sufficient

facts to support a CPA claim, including deception, public-interest impact, and injury; (7) plaintiffs have

stated a claim for promissory estoppel and equitable estoppel because Chase told plaintiffs that, in order

to qualify for a loan modification, they would be required to be behind on their loan; that Chase promised

to halt the foreclosure action when it did not; and when Chase stated on its application that it would take

four to six weeks to complete the modification process; (8) plaintiffs have stated a valid breach of

contract and implied covenant of good faith and fair dealing when Chase informed plaintiffs that, in order

to qualify for a loan modification, they would be required to be behind in their loan payments; when the

parcel number listed in the Notice of Sale does not match the parcel number listed in the deed of trust; and

when Chase failed to take reasonable action in response to plaintiffs' application for loan modification;

(9) an implied cause of action for wrongful foreclosure should be recognized, but, in the event the court

dismisses this cause of action, the dismissal should be without prejudice; and (10) plaintiffs request that

they be permitted to withdraw without prejudice their claims for defamation of credit, violation of the

FCRA and FDCPA.  Dkt. 31.

On October 15, 2010, QLS filed a reply, arguing that plaintiffs have not stated a claim for

wrongful foreclosure under the Deed of Trust Act because no foreclosure has occurred and because there

is no cause of action for wrongful institution of foreclosure proceedings.  Dkt. 33.

On October 22, 2010, Chase filed a reply, contending that the court should dismiss with prejudice

plaintiffs' claims for defamation of credit, violation of the FCRA, and violation of the FDCPA; the

economic loss rule bars plaintiffs' claims for misrepresentation, and outrage; plaintiffs have alleged no

facts plausibly showing misrepresentation or outrage; plaintiffs have not alleged facts supporting

promissory estoppel; Washington does not recognize a claim for wrongful initiation of foreclosure and the

court should not create such a claim; plaintiffs do not allege facts that Chase breached any contract term

or violated its duty of good faith; plaintiffs' CPA claim is preempted by the National Banking Act; the

Comptroller of Currency regulates loan administration practices and exempt from the CPA; plaintiffs

have not alleged facts supporting a CPA claim; and amendment of the complaint would be futile.  Dkt. 34.

<u>LEGAL STANDARD</u>

Any party may bring a motion for judgment on the pleadings "[a]fter the pleadings are closed–but

early enough not to delay trial[.] Fed. R. Civ. P. 12(c). Motion for judgment on the pleadings is decided

1    under the same standard as a motion to dismiss under Fed.R.Civ.P. 12(b)(6).  *McGlinchy v. Shell Chem.*,

2    845 F.2d 801, 810 (9th Cir. 1988).

3         Under Fed. R. Civ. P. 12 (b)(6), a complaint may be dismissed for "failure to state a claim upon

4    which relief can be granted."  Dismissal of a complaint may be based on either the lack of a cognizable

5    legal theory or the absence of sufficient facts alleged under a cognizable legal theory.  *Balistreri v.*

6    *Pacifica Police Department*, 901 F.2d 696, 699 (9th Cir. 1990). While a complaint attacked by a Rule

7    12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the

8    grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation

9    of the elements of a cause of action will not do.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555

10   (2007) (*internal citations omitted*).

11        Accordingly, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter,

12   accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 129 S.Ct. 1937,

13   1949 (2009)(*citing Twombly*, at 570).  A claim has "facial plausibility" when the party seeking relief

14   "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable

15   for the misconduct alleged."  *Id*.  First, "a court considering a motion to dismiss can choose to begin by

16   identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption

17   of truth."  *Id.*, at 1950.  Secondly, "[w]hen there are well-pleaded factual allegations, a court should

18   assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  *Id*.

19   "In sum, for a complaint to survive a motion to dismiss the non-conclusory factual content, and

20   reasonable inferences from that content must be plausibly suggestive of a claim entitling the pleader to

21   relief."  *Moss v. U.S. Secret Service,* 2009 WL 2052985 (9th Cir. July 16, 2009).

22        If a claim is based on a proper legal theory but fails to allege sufficient facts, the plaintiff should

23   be afforded the opportunity to amend the complaint before dismissal.  *Keniston v. Roberts*, 717 F.2d 1295,

24   1300 (9th Cir. 1983).  If the claim is not based on a proper legal theory, the claim should be dismissed.

25   *Id*.  "Dismissal without leave to amend is improper unless it is clear, upon de novo review, that the

26   complaint could not be saved by any amendment."  *Moss v. U.S. Secret Service,* 2009 WL 2052985 (9th

27   Cir. July 16, 2009).

28        On a motion for judgment on the pleadings, the court may consider documents relied on in a

complaint without converting the motion to one for summary judgment.  *Lee v. City of L.A.*, 250 F.3d 668, 688-89 (9th Cir. 2001).  A court may consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the Fed.R.Civ.P. 12(b)(6) motion.  *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). A court may treat such a document as "part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). *See Parrino v. FHP, Inc*., 146 F.3d 699, 706 (9th Cir. 1998). Even if the plaintiff's complaint does not explicitly refer to documents, if plaintiffs predicate their claims on those documents, defendants may rely on them).  Further, pursuant to Fed. R. Evid. 201, a court may take judicial notice of "matters of public record" without converting a motion to dismiss into a motion for summary judgment.  *Mack v. South Bay Beer Distrib., Inc.,* 798 F.2d 1279, 1282 (9th Cir. 1986). In addition, when a court takes judicial notice of another court's opinion, it may do so "not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity." *Lee*, 250 F.3d at 690 (quoting *Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd.,* 181 F.3d 410, 426-27 (3rd Cir. 1999)).  A court may not, however, take judicial notice of a fact that is subject to reasonable dispute.  Fed. R. Evid. 201(b).

In reviewing these motions for judgment on the pleadings, the court has considered the complaint (Dkt. 8, at 8-25); Exhibits A, B, and C to the complaint (Dkt. 8, at 26-85); proceedings in the state court action before the case was removed to federal court (Dkt. 8, at 86-106); the declaration of Araceli Urquidi (Dkt. 22, at 1-49); and the declaration of Jerry Wells (Dkt. 32, at 1-8).  These documents were either attached to the complaint, and/or the allegations necessarily relied on them; and/or were matters of public record.  The court also considered an order entered on September 30, 2010, in *Engel v. First American Title Insurance Company*, C09-5140BHS (Dkt. 33-1, at 2-11).  Because the court may properly consider these documents in relation to a motion for judgment on the pleadings, the court did not convert the instant motions to motions for summary judgment.  See Fed.R.Civ.P. 12(d).

## DISCUSSION

### 1.  Tort Claims and the Economic Loss Rule

Chase contends that the tort claims alleged in this case are barred by the economic loss rule.  *See*

Dkt. 34, at 3-5.  Chase maintains that the tort claims arise out of the contractual relationship between the parties, and that they are therefore barred by the economic loss rule.  *Id.*  The plaintiffs contend that their tort claims arise from circumstances outside of their contract with Chase and therefore those claims are not barred by the economic loss rule.  Dkt. 31 at 15.

The economic loss rule bars recovery for alleged breach of tort duties "where a contractual relationship exists and the losses are economic in nature."  *Alejandre v. Bull*, 159 Wn.2d 674, 683 (2007).  The economic loss rule creates a line between tort law, which is meant to protect citizens and their property by imposing a duty of reasonable care, and contract law, which is meant to enforce expectations created by agreement. *Berschauer/Phillips Constr. Co. v. Seattle Sch. Dist. No. 1,* 124 Wn.2d 816, 821 (1994). The rule is intended to prevent disproportionate liability and to allow the parties to allocate risk through contract. *Berschauer/Phillips,* 124 Wn.2d at 822.

These motions are for judgment on the pleadings.  At this point, it is not clear that the tort claims alleged in this case are barred by the economic loss rule, particularly in light of recent Washington Supreme Court cases.  *See Eastwood v. Horse Harbor Foundation*, 2010 WL 4351986 (Wash.) and *Affiliated FM Insurance Company v. LTK Consulting Services, Inc.*, 2010 WL 4350338 (Wash.).  Plaintiffs have stated a claim that the process of loan modification involves a duty independent from the underlying mortgage contract.  For purposes of these motions for judgment on the pleadings, the tort claims should not be barred on the basis of the economic loss rule.

### 2. Misrepresentation Claim Against Chase

In their complaint, plaintiffs contend that Chase made the following misrepresentations: (1) Chase provided the application for home loan modification that stated "Please allow 4-6 weeks for processing," but Chase did not contact plaintiffs about their application until 2 ½ months later; (2) Chase represented to plaintiffs that their loan would be converted to a 40-year fixed rate, with the interest lowered by 2%, and that all late fees and charges would be moved to the back of the loan, but Chase's final offer required plaintiffs to pay an up front amount of $24,500; and (3) Chase represented to plaintiffs that the foreclosure process would be/had been stopped, but the foreclosure process continued.  Dkt. 31, at 16-18. Chase contends that the above described statements were statements of future intent that were not false and therefore cannot give rise to a misrepresentation claim.  Dkt. 34, at 5.  Further, Chase argues that

1    plaintiffs have not alleged the other required elements of their misrepresentation claim.  *Id.*

2          When pleading a misrepresentation claim, plaintiffs must plead the nine elements of fraud: (1)

3    representation of an existing fact; (2) materiality; (3) falsity; (4) speaker's knowledge of its falsity; (5)

4    intent of the speaker that it should be acted upon by plaintiffs; (6) plaintiffs; ignorance of its falsity; (7)

5    reliance on the representation; (8) plaintiffs' right to rely upon it; and (9) actual harm.  *See e.g.*, *Stiley v.*

6    *Block*, 130 Wn.2d 486, 505 (1996).  These elements must be plead with particularity, which requires that

7    the pleading apprise the defendant of the facts that give rise to the allegation of fraud.  *See Adams v. King*

8    *County*, 164 Wn.2d 640, 662 (2008).

9          Here, plaintiffs has asserted sufficient facts to plead misrepresentation claims.  Plaintiffs pleadings

10   were sufficient to apprise Chase of the facts that give rise to the plaintiffs' allegations of fraud.

11   Accordingly, the defendants' motions for judgment on the pleadings as to the plaintiffs' misrepresentation

12   claims should be denied.

13        **2. Equitable and/or Promissory Estoppel Claim Against Chase**

14         Chase contends that although the plaintiffs' allegations may suggest poor customer service, these

15   allegations do not identify a promise by Chase that it reasonably expected would cause the plaintiffs to

16   change their position.  Dkt. 34.  The plaintiffs contend that Chase made promises to the plaintiffs when

17   Chase informed the plaintiffs that they must be behind in their loan payments in order to qualify for a

18   modification; when the application for home loan modification that stated "Please allow 4-6 weeks for

19   processing"; when Chase represented to plaintiffs that their loan would be converted to a 40-year fixed

20   rate, with the interest lowered by 2%, and that all late fees and charges would be moved to the back of the

21   loan; and when Chase represented to plaintiffs that the foreclosure process would be/had been stopped,

22   but the foreclosure process continued.  Dkt. 31.

23         To prove promissory estoppel, plaintiffs must establish (1) a promise which (2) the promisor

24   should reasonably expect to cause the promisee to change his position and (3) which does cause the

25   promisee to change his position (4) justifiably relying upon the promise in such a manner that (5) injustice

26   can be avoided only by enforcement of the promise.  *See Havens v. C & D Plastics, Inc.*, 124 Wn.2d 158,

27   171-72 (1994).  Thus, a promise is necessary for there to be an argument of promissory estoppel.  *Id.*  A

28   promise is "a manifestation of intention to act or refrain from acting in a specified way, so made as to

justify a promisee in understanding that a commitment has been made." *Elliott Bay Seafoods, Inc. v. Port of Seattle*, 124 Wn. App. 5, (Wash. App. Div. 1, 2004) (citing Restatement (Second) of Contracts § 2(1)). Although promissory estoppel may be used in absence of consideration, it may not be used as a way of supplying a promise. *Elliot Bay Seafoods, Inc.*, 124 Wn. App. at 13 (citing *Havens*, 124 Wn.2d at 173). A statement of future intent is not sufficient to constitute a promise. *Meissner v. Simpson Timber Co.*, 69 Wn.2d 949, 957 (1966). Additionally, an agreement to negotiate a contract in the future is nothing more than negotiations. *See e.g., Johnson v. Star Iron & Steel Co.*, 9 Wn. App. 202, 206 (1973) (citing *Sandeman v. Sayres*, 50 Wn.2d 539 (1957).

Here, Chase's action in informing the plaintiffs that they must be behind in their mortgage payments in order to quality for a loan modification does not constitute a promise as defined above. Such statement could at most be construed as an agreement to negotiate a contract in the future should the pre-requisite condition exist. However, the plaintiffs remaining allegations are sufficient to allege the elements of promissory estoppel at this stage. Accordingly, the defendants' motions for judgment on the pleadings as to the plaintiffs' promissory estoppel claims should be denied as to all claims of promises other than the statement of qualifying for a loan modification and granted as to the statement of qualifying for a loan modification.

### 3. Outrage Claim Against Chase

Chase argues that "[a]lthough Plaintiffs may have been frustrated with Chase's struggle to provide a loan modification at a time when federal guidelines were changing, communication delay is not extreme or outrageous and cannot be characterized as atrocious or 'utterly intolerable in a civilized community.'" Dkt. 21, at 8. Plaintiffs contend that the communication delay and Chase's failure to stop the foreclosure process as it said it would were in fact outrageous. Dkt. 31 at 20-21.

The elements of the tort of outrage are (1) extreme and outrageous conduct; (2) intentional or reckless infliction of emotional distress; and (3) actual result to the plaintiff of severe emotional distress. *Dicomes v. State*, 113 Wash.2d 612, 630 (1989). The conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. *Grimsby v. Samson*, 85 Wn.2d 52, 59 (1975) (citing Restatement (Second) of Torts §46 (1965).

ORDER
Page - 11

The home foreclosure process itself is likely to cause emotional distress to the homeowners. However, when a lending party institutes foreclosure its conduct is not outrageous absent additional allegations of outrageous behavior such as physical threats, emotional abuse, or other personal indignities. *See Vawter v. Quality Loan Serv. Corp.*, 2010 WL 1629355 at *23.

Here, plaintiffs have not alleged physical threats, emotional abuse, or other personal indignities beyond the misrepresentations they claim that Chase made and the time delay they claim Chase caused in the loan modification process. Therefore, plaintiffs have not sufficiently plead a claim for extreme and outrageous conduct. Accordingly, the defendants' motions for judgment on the pleadings as to the plaintiffs' outrage claims should be granted.

**4. Washington Consumer Protection Act (CPA) Claim Against Chase**

Chase argues that plaintiffs' claim under the Washington Consumer Protection Act (CPA) is preempted by the National Banking Act (NBA); that the CPA expressly excludes liability for actions regulated by any other regulatory agency, such as the Office of the Comptroller fo the Currency (OCC), which regulates national banks; and that plaintiffs have not sufficiently pled a CPA claim because they have not shown an unfair or deceptive act, an impact on the public interest, or injury. Dkt. 21, at 16-21. Plaintiffs contend that their CPA claim is not preempted and has been sufficiently plead. Dkt. 31, at 21-23.

***a. Elements of CPA Claim Against Chase***

Washington's Consumer Protection Act creates a private cause of action. "Any person who is injured in his or her business or property by a violation of RCW 19.86.020 ('unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce')…may bring a civil action." RCW 19.86.090. The elements of a private CPA violation are (1) an unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) that impacts the public interest; (4) and causes injury to the plaintiff in his or her business or property; and (5) such injury is causally linked to the unfair or deceptive act. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 780 (1986).

The third element, public interest, depends upon the nature of the dispute. In a private dispute, the public interest prong depends upon "the likelihood that additional plaintiffs have been or will be injured

in exactly the same fashion." *Hangman Ridge*, 105 Wn.2d at 790.  In a consumer transaction, the court must examine several factors to determine whether the public interest is impacted: (1) Were the alleged acts committed in the course of defendant's business? (2) Are the acts part of a pattern or generalized course of conduct? (3) Were repeated acts committed prior to the act involving plaintiff? (4) Is there a real and substantial potential for repetition of defendant's conduct after the act involving plaintiff? (5) If the act complained of involved a single transaction, were many consumers affected or likely to be affected by it?

*Id.*  Where the transaction was essentially a private dispute, the following factors may indicate the requisite public interest: "(1) Were the alleged acts committed in the course of defendant's business? (2) Did defendant advertise to the public in general? (3) Did defendant actively solicit this particular plaintiff, indicating potential solicitation of others? (4) Did plaintiff and defendant occupy unequal bargaining positions?" *Id.* at 790-91.

Here, plaintiffs have alleged several misrepresentations made by Chase, as described in sections above.  Plaintiffs additionally allege that Chase solicited them with a letter describing loan modifications and that Chase customer service engaged in a pattern of misrepresentations.  *See* Dkt. 31.  These allegations are sufficient to plead an impact on the public interest.  Plaintiffs have also pled that they suffered injury.  Therefore, plaintiffs have sufficiently pled their CPA claim.

### b. CPA Claims Not Preempted by the NBA

The Court must determine whether the NBA and the regulations issued by the Office of the Comptroller of the Currency ("OCC") bar plaintiffs' state law claims under the CPA.  The NBA was enacted "to protect national banks against intrusive regulation by the States."  *See* Cong. Globe, 38th Cong., 1st Sess, 1451 (1864) (noting that the 'object' of the National Bank Act was to 'establish a national banking system' free from intrusive state regulation.)  *Bank of Am. v. City and County of San Francisco*, 309 F.3d 551, 561 (9th Cir. 2002).  OCC, the agency charged with promulgating regulations under the NBA, has declared that any state law that obstructs, impairs, or conditions a national bank's real estate lending operations does not apply to national banks.  12 C.F.R. § 34.4(a).  OCC provided a list, categorized by the object of regulation, of state laws that are preempted, including any laws purporting to impose requirements regarding disclosures in loan applications or credit-related documents.  12 C.F.R. §

34.4(9).  OCC did not, however, intend to preempt state laws of general applicability that have only an incidental effect on the lending operations of federal savings associations. 12 C.F.R. § 34.4(b).

Here, the CPA claim asserted by plaintiffs is not directly aimed at national banks or lenders in general.  The question, therefore, is whether, under § 34 .4(b), the state laws are being used by plaintiffs as a vehicle to impose limitations on the exercise of national banks' real estate lending power.  *See Fultz v. World Savings and Loan Ass'n*, 2008 WL 4131512.  The Ninth Circuit has addressed a similar issue in *Martinez v. Wells Fargo Home Mortgage, Inc.*, 598 F.3d 549 (9h Cir. 2010).  In that case the Ninth Circuit found that "[s]tate laws of general application, which merely require all business (including national banks) to refrain from fraudulent, unfair, or illegal behavior, do not necessarily impair a bank's ability to exercise its real estate lending powers."  *Martinez*, 598 F.3d at 555.  But the court then distinguished claims of general deception or misrepresentation from claims of misrepresentation based on underlying conduct that is preempted by federal regulation.  *Id.* at 556 (holding that the plaintiff's state law claims for misrepresentation based on underlying conduct of fee setting and disclosures was preempted by federal regulation).

Plaintiffs have pled that Chase made several misrepresentations in violation of the CPA, as described in sections above.  At this stage, it does not appear that plaintiffs' allegations are based on underlying conduct that is preempted by federal regulation.  Accordingly, the defendants' motions for judgment on the pleadings as to the plaintiffs' CPA claim should be denied.

### 5. Breach of Contract Claim Against Chase

Chase contends that plaintiffs have not sufficiently pled a breach of contract claim or a breach of good faith and fair dealing because plaintiffs have not alleged a specific contract term was broken and because Chase was not under obligation to negotiate a loan modification with plaintiffs. Dkt. 21, at 15-16.  Plaintiffs contend that Chase breached its duties because (1) recent amendments to the Deeds of Trust Act in RCW 61.24.031(1)(b) now requires that lenders "explore options for the borrower to avoid foreclosure," because (2) Chase undertook negotiations with plaintiffs and therefore had a duty to conduct negotiations in good faith; and because (3) Chase listed the wrong parcel number on the Notice of Default posted on plaintiffs property.  Dkt. 31, at 25-27.

There is in every contract an implied duty of good faith and fair dealing. *Badgett v. Security State Bank*, 116 Wn.2d 563, 569 (1991). This duty obligates the parties to cooperate with each other so that each may obtain the full benefit of performance. *Id.* However, the duty of good faith does not extend to obligate a party to accept a material change in the contract. Id. Overall, good faith espouses "faithfulness to an agreed common purpose and the justified expectations of the other party." *Myers v. State*, 152 Wn. App. 823 (2009), *review denied*, 168 Wn.2d 1027 (2010).

Here, plaintiffs have sufficiently pled claims for breach of contract and breach of good faith and fair dealing when they alleged that Chase violated its statutory and contractual duties. Accordingly, the defendants' motions for judgment on the pleadings as to the plaintiffs' breach of contract and breach of good faith and fair dealing claims should be denied.

**6. Defamation of Credit Claim, Fair Credit Reporting Act (FCRA) Claim, and Fair Debt Collection Practices Act (FDCPA) Claim Against Chase**

Plaintiffs have withdrawn their claims for defamation of credit, violation of the FCRA, and violation of the FDCPA. Dkt. 31, at 14 n. 10. Plaintiffs request that the claims be dismissed without prejudice. *Id.* Accordingly, the court should dismiss the plaintiffs claims for defamation of credit, violation of the FCRA, and violation of the FDCPA without prejudice.

**7. Wrongful Foreclosure Claim against Chase and QLS**

Plaintiffs have alleged a cause of action for wrongful foreclosure. Dkt. 31. Chase and QLS contend that plaintiffs cannot bring an action for wrongful foreclosure because no foreclosure occurred and there is no recognized action for wrongful institution of foreclosure proceedings. Dkt. 21, at 11-12.

Washington's Deed of Trust Act (DTA) establishes the procedures and requisites for nonjudicial foreclosure. Wash. Laws of 1965, ch. 74. In enacting the DTA, the Washington legislature sought to promote three primary goals: "(1) that the nonjudicial foreclosure process should be efficient and inexpensive; (2) that the process should result in interested parties having an adequate opportunity to prevent wrongful foreclosure; and (3) that the process should promote stability of land titles." *See Plein v. Lackey*, 149 Wn.2d 214, 225 (2003).

The DTA does not authorize a cause of action for damages for the wrongful institution of nonjudicial foreclosure proceedings where no trustee's sale occurs. *See Pfau v. Wash. Mutual, Inc.*, 2009

1   WL 484448 at *12 (E.D. Wash.); *Krienke v. Chase Home Fin., LLC*, 140 Wn. App. 1032 (2007); *see also*

2   *Henderson v. GMAC Mortgage Corp.*, 2008 WL 1733265 at *5 (W.D. Wash.) (holding that plaintiff's

3   claim for wrongful foreclosure under the DTA failed because no foreclosure occurred).  In both *Pfau* and

4   *Krienke*, the courts rejected the argument that a grantor can maintain a damages claim for wrongful

5   institution of nonjudicial foreclosure proceedings where no trustee's sale actually occurs.  In *Vawter v.*

6   *Quality Loan Serv. Corp.*, 2010 WL 1629355 at *2 (W.D. Wash.), this court has agreed with the

7   reasoning of *Pfau* and *Krienke* and concluded that plaintiffs have failed to plead a viable claim under the

8   DTA and Washington law when the plaintiffs' complaint is properly construed as a claim for wrongful

9   institution of nonjudicial foreclosure proceedings since no foreclosure has occurred.

10          Here, plaintiffs have alleged a claim for wrongful foreclosure when no foreclosure has occurred.

11  Therefore, plaintiffs' claim is properly construed as a claim for wrongful institution of nonjudicial

12  foreclosure proceedings and this claim should be dismissed as a matter of law.  Accordingly, the

13  defendants' motions for judgment on the pleadings as to the plaintiffs' wrongful foreclosure claim should

14  be granted.

15          Therefore, it is hereby **ORDERED** that Chase's Motion for Judgment on the Pleadings (Dkt. 21)

16  and Quality Loan Service Corp. Motion for Judgment on the Pleadings and Joinder in Chase's Motion for

17  Judgment on the Pleadings (Dkt. 23) are **GRANTED IN PART** and **DENIED IN PART**, as follows:

18          1.      The defendants' motions for judgment on the pleadings as to the plaintiffs'

19                  misrepresentation claims are **DENIED**, and these claims may proceed.

20          2.      The defendants' motions for judgment on the pleadings as to the plaintiffs' promissory

21                  estoppel claims are **GRANTED** with regard to Chase's alleged statement that plaintiffs

22                  must be behind in their loan payments to qualify for a loan modification, and this claim is

23                  **DISMISSED WITHOUT PREJUDICE.**  The motions are **DENIED** as to the remaining

24                  claims of promises allegedly made by Chase, and these claims may proceed.

25          3.      The defendants' motions for judgment on the pleadings as to the plaintiffs' outrage claims

26                  are **GRANTED,** and these claims are **DISMISSED WITHOUT PREJUDICE.**

27          4.      The defendants' motions for judgment on the pleadings as to the plaintiffs' CPA claim are

28                  **DENIED**, and this claim may proceed.

ORDER
Page - 16

5.  The defendants' motions for judgment on the pleadings as to the plaintiffs' breach of contract and breach of good faith and fair dealing claims are **DENIED**, and these claims may proceed.

6.  The plaintiffs claims for defamation of credit, violation of the FCRA, and violation of the FDCPA are **DISMISSED WITHOUT PREJUDICE**.

7.  The defendants' motions for judgment on the pleadings as to the plaintiffs' wrongful foreclosure claim are **GRANTED**, and this claims is **DISMISSED WITHOUT PREJUDICE**.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

DATED this 19th day of November, 2010.

Robert J. Bryan
United States District Judge

ORDER
Page - 17